**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSLVANIA**

| | |
|---|---|
| PATRICIA PAHIRA, Individually and as the Administrator for the ESTATE OF MICHAEL PAHIRA JR.<br>27 Paul St.<br>Ashland, PA 17921<br><br>Plaintiff<br>v.<br><br>MICHAEL BON<br>75 Intervale St., Apt. 1<br>Brockton, MA 02302<br><br>AUGUSTIN FREIGHT SERVICES LLC<br>105 B Madison Ave.<br>Albertville, AL 35950<br><br>SNK LOGISTICS LLC<br>4411 Eastpark Dr.<br>Houston, TX 77028<br><br>Defendants | No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

AND NOW COMES the Plaintiff, Patricia Pahira, Individually and as the Administrator of the Estate of Michael Pahira Jr., by and through her counsel, Morgan & Morgan Philadelphia, PLLC, and hereby complains against the above-named Defendants, and in support thereof avers as follows:

**PARTIES**

1. The Plaintiff, Patricia Pahira (hereinafter “Plaintiff”) is an adult individual who resides at 27 Paul St., Ashland, PA 17921 and is Administrator for the Estate of Michael Pahira Jr. (hereinafter “Deceased Plaintiff”).

2. The Defendant, Michael Bon (hereinafter "Defendant") is an adult individual who resides at 75 Intervale St., Apt 1, Brockton, MA 02302.
3. The Defendant, Augustin Freight Services LLC (hereinafter "AFS") is a business entity with a registered address at 105 B Madison Ave., Albertville, AL 35950.
4. AFS's USDOT number is listed as 4162522.
5. The Defendant, SNK Logistics LLC (hereinafter "SNK") is a Texas business entity with a registered address at 4411 Eastpark Dr., Houston, TX 77028.
6. At all material times, Defendants were or should have been an authorized interstate motor carrier authorized to transport goods in interstate commerce and in the Commonwealth of Pennsylvania pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT").
7. Accordingly, Defendants were subject to all state and federal laws, statutes, regulations, and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, Pennsylvania statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.
8. Defendant AFS, in order to obtain a DOT number was required to submit an OP-1 form containing a "Safety Certification", certifying to the FMCSA that it has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that Defendants will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

9. More specifically, each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants:

   a. had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;
   b. can produce a copy of the FMCSRs;
   c. had and will have in place a driver safety training/orientation program;
   d. had and will have prepared and maintained an accident register;
   e. is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;
   f. had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;
   g. is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and
   h. must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

10. In order to obtain a DOT number, the Defendant and/or their authorized representative swore under the penalty of perjury to comply with the above "Safety Certifications."

11. Defendant was a class A licensed commercial motor vehicle operator driving a 2019 Freightliner tractor trailer with VIN number 3AKJHHDR5KSKP0361 (hereinafter "Freightliner") owned, leased, assigned and/or operated by Defendants.

12. According, Defendant was subject to all state and federal laws, statutes, regulations, and industry standards governing the safe maintenance and operation of commercial motor

vehicles and trailers including, without limitation, Pennsylvania Statutes governing motor vehicles and the FMCSR set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

13. At all material times, the Freightliner was owned, leased, assigned, and/or operated by Defendants and was operated and/or controlled by Defendant Bon with the consent of the Defendants and for the financial benefit of Defendants.

14. At all material times, Defendant Bon was employed and/or contracted to perform services for and was operating the Freightliner for Defendants under the Defendants' USDOT operating authority and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Defendant Bon's negligence and recklessness.

15. At all material times, Defendant Bon was the servant, workman, and/or employee of Defendants and was acting in the course and scope of his employment, under the direction, control and authority of Defendants and was the permissive user on behalf of all Defendants, of the Freightliner involved in the crash.

16. At all material times, Defendant Bon was the agent of Defendants vested with actual and/or apparent authority of Defendants and was the permissive user on behalf of all Defendants, of the Freightliner involved in the crash.

17. At all material times, Defendants acted as one single entity and operated and conducted business as a single entity for transportation services in interstate commerce.

18. At all material times, Defendants were engaged in the joint undertaking of particular transaction for mutual profit, mutual control, mutual contribution and this joint undertaking was memorialized in a contract.

19. At all material times, Defendants acted as a joint venture for transportation of goods in interstate commerce.

20. Upon information and belief, SNK entered into a broker-motor carrier agreement with AFS.

21. At all material times, SNK should have known about the poor safety record of AFS.

22. At all material times, Defendant Bon was driving a Freightliner owned, leased, assigned and/or operated by Defendants.

23. Accordingly, all Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the crash that caused Plaintiff to suffer catastrophic and fatal injuries.

24. Defendants acted in a manner that either alone, combined, and/or occurring with the actions of other Defendants, directly and proximately caused the crash and the resulting fatal injuries and death suffered by the Decedent.

25. At all material times, the Defendants were liable for the actions and/or inactions of Defendant Bon as though the actions and/or inactions were performed by the entity themselves.

26. At all material times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to Pennsylvania code.

27. At all material times, deceased Plaintiff acted with due care and in no way caused or contributed to the crash that forms the basis of this lawsuit.

**MICHAEL PAHIRA JR.**

28. It was fitting that Michael Pahira Jr. had recently moved back into the Pahira family home, as it was the site of so many good memories.

29. The Pahira house was always full of family, friends and food.

30. Everyone was so comfortable there, as it was hard to tell the difference between family and friends.

31. But the reality is, his friends were family, and no house could be big enough to hold all those people whose lives Michael Pahira Jr. made an impact on.

32. The outpouring of love since Michael's death has been incredible, from his friends, his fellow State Troopers, and even from the commercial drivers he inspected and ticketed over the years.

33. 6'4" and larger than life, Michael Pahira Jr. served this Commonwealth every day as a Pennsylvania State Police Motor Carrier Enforcement Inspector, enforcing the laws that were meant to protect the motoring public from harm.

34. The Pahira family never could have imagined that their beloved Michael would be taken from this world due to reckless violations of the same laws that Michael enforced every single day.

## JURISDICTION AND VENUE

35. This Honorable Court has jurisdiction pursuant to 28 U.S.C. 1332 as the deceased Plaintiff was a citizen of Pennsylvania, the Administrator of the Estate is a citizen of Pennsylvania, the Defendant is a citizen of Massachusetts, AFS's principal place of business is Alabama and SNK's principal place of business is Texas and the amount in controversy exceeds $150,000.

36. Venue is proper in the Middle District as the crash took place in Schuylkill County.

## FACTUAL BACKGROUND

37. The preceding paragraphs are incorporated herein as though fully set forth below.

38. On July 1, 2026 at approximately 7:01 a.m., the deceased Plaintiff was a Pennsylvania State Trooper conducting a routine MCASP inspection of a commercial motor vehicle on I-81 southbound in Butler Township.

39. The deceased Plaintiff parked his State Police F350 behind the commercial motor vehicle fully off the roadway.

40. At all material times, the emergency lights of the F350 were activated.

41. The commercial motor vehicle the deceased Plaintiff was inspecting was also fully off the roadway.

42. The inspection went on for approximately 40 minutes.

43. During those forty minutes, no harm came to Michael from the countless cars and commercial vehicles that drove by.

44. At the above date, place and time, the Defendant was traveling southbound on I-81 in the right lane.

45. At all material times hereto, the Defendant was transporting a load brokered by SNK.

46. According to sworn testimony, the deceased Plaintiff's vehicle with its emergency lights would have been visible from 1.1 to 1.2 miles away.

47. The deceased Plaintiff's vehicle with its emergency lights activated, would have been visible to the Defendant for a minimum of 49 seconds.

48. The Defendant left his lane of travel, traveled over the fog line and struck the side mirror of the deceased Plaintiff's F350.

49. The Defendant then struck the rear of the commercial motor vehicle the deceased Plaintiff was inspecting with tremendous force.

50. The Defendant then struck the deceased Plaintiff, dragging him until the Defendant's Freightliner came to a stop.

51. The impact between the Defendant's Freightliner and the commercial motor vehicle being inspected caused the Defendant's cab to catch fire.

52. A witness who was operating an XPO tractor trailer noticed the deceased Plaintiff trapped underneath the Defendant's cab.

53. He quickly pulled over and attempted to walk towards the Trooper, however the heat from the fire was too much.

54. He immediately called 911.

55. While on with 911, the witness saw the Defendant exit the truck.

56. The Defendant wasn't wearing any shoes, just his socks.

57. The Defendant then went back into the burning cab to retrieve his shoes and put them on.

58. According to the witness, the Defendant looked like he had just woken up.

59. Notably, the Defendant never said anything about a seizure or an epileptic condition.

60. A witness who was working on a nearby construction site saw the smoke and approached the scene.

61. The witness saw the Plaintiff trapped underneath the burning Freightliner.

62. Deceased Plaintiff's arm was visibly broken with a bone protruding through the skin.

63. The witness asked the deceased Plaintiff if he could pull him out from under the Freightliner.

64. The deceased Plaintiff, still alive, simply said legs.

65. The witness once again asked the deceased Plaintiff if he could pull him out from underneath the burning Freightliner.

66. The deceased Plaintiff pointed to the shoulder of the road.
67. The witness then grabbed the deceased Plaintiff by his shirt, however it started to come off.
68. The witness then grabbed the deceased Plaintiff by his vest.
69. The deceased Plaintiff's vest began to tear when all of a sudden, an explosion occurred.
70. The witness once again began pulling the deceased Plaintiff out from underneath the burning Freightliner when a second explosion occurred.
71. After the second explosion, the witness, determined not to let Michael Pahira Jr. burn to death, was able to free the deceased Plaintiff from the burning Freightliner and drag him to the shoulder.
72. The State Police arrived and started chest compressions.
73. EMS eventually arrived at the scene and took over.
74. The deceased Plaintiff was taken to the hospital where he was pronounced dead.
75. The Defendant, a Haitian citizen, was issued a non-domiciled CDL by the commonwealth of Massachusetts.
76. Upon information and belief, and through statements made by the Defendant's criminal attorney, the alleged reason the Defendant left the lane of travel was because he suffered a seizure.
77. To become a qualified Commercial Motor Vehicle driver, a person needs to be medically qualified.
78. Part of the process of being medically qualified involves filling out a Medical Examination Report Form.
79. Question #2 asks: Do you have **or have you ever had** seizures / epilepsy.

80. The Defendant checked no.

81. Additionally, a blood test of the Defendant revealed he had THC in his system.

82. As a result of the Crash, Defendant Bon was charged with the following:

   a. Involuntary manslaughter;

   b. Recklessly endangering another person;

   c. Obedience to traffic control device;

   d. Driving on roadways laned for traffic;

   e. Duty of driver in relation to emergency response area;

   f. Careless driving;

   g. Homicide by vehicle;

   h. Aggravated assault by vehicle; and

   i. Reckless driving.

83. At all material times, Defendant Bon exhibited a conscious disregard for the health and safety of the motoring public by failing to move his vehicle into the left lane upon seeing the clearly visible emergency lights of the deceased Plaintiff's F350.

84. As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, Michael Pahira Jr., the Estate of Michael Pahira Jr., Plaintiff, and the Decedent's family, have suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses including, but not limited to:

   a. Funeral and burial expenses;

   b. Costs of Estate administration;

   c. Profound psychological and emotional loss;

   d. Pre-death fright and fear of impending death;

e. Conscious pain and suffering;

f. Loss of the comfort, care, and society of Michael Pahira Jr.; and

g. Such other injuries, damages and losses described more fully herein and compensable at law under the Wrongful Death Act and the Survival Act.

85. The economic and non-economic injuries, damages and losses suffered by the Estate of Michael Pahira Jr., Plaintiff Patricia Pahira, and the Decedent's family, were caused solely and exclusively by the negligence and/or recklessness of the Defendants, as described herein, and were not caused or contribuSted to by any act or failure to act on the part of Michael Pahira Jr. or his family.

86. At all material times, SNK knew or should have known that AFS, with only four drivers, had an unsafe history of performing services as a motor carrier in the two years leading up to the crash, including, but not limited to:

a. A vehicle out of service percentage of 40%, nearly twice the national average;

b. Obtaining 82 unsafe driving violation points in just over a year, including:

i. Failure to use seat belt

ii. Failure to obey a traffic control device

iii. Speeding 15 or more miles per hour

iv. Speeding 6-10 miles per hour over the limit

v. Operate a CMV while using a cellular phone

vi. Lane restriction violation

c. Log falsification violation; and

d. 144 maintenance violation points in just over a year.

87. Upon information and belief, at the time of the crash, Defendant Bon consciously chose to operate the Freightliner in a fatigued condition.

88. Moreover, Defendants participated in, knew, or should have known that Defendant Bon was not qualified and/or had the requisite training to be operating the Freightliner.

89. At all material times, Defendants knew of Defendant Bon's limited driving experience, and chose to hire him anyway.

90. At all material times, Defendants knew of Defendant Bon's limited driving experience and chose not to train him.

91. At all material times, SNK knew of the poor safety record of AFS and chose to hire them to transport the subject load anyway.

92. This information was known and/or readily available to Defendants, all before the Crash that fatally killed Michael Pahira Jr.

93. At all material times, the FMCSA as part of its Safety Management System maintained a user-friendly website that was available to the public that tracks the registration, safety and compliance of all motor carriers that have a USDOT number, like AFS. The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means. The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

94. SNK was aware of the FMCSA website.

95. At all material times, the FMCSA website contained information that should have alerted SNK that AFS was unsafe, and/or not property authorized motor carriers that utilized unsafe drivers and equipment.

96. Moreover, despite Defendant Bon's lack of experience, safety record, incompetence and dangerous behavior, Defendants negligently, recklessly and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

97. At all material times, upon information and belief, Defendants exercised complete control over the routing of the Freightliner driven by Defendant Bon at the time of the crash.

98. At all material times, SNK had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Defendant Bon and AFS should be considered agents of SNK.

**COUNT I**
**NEGLIGENCE / RECKLESSNESS**
**PATRICIA PAHIRA, Individually and as the Administrator of the ESTATE OF MICHAEL PAHIRA JR. v. MICHAEL BON**

99. The preceding paragraphs are incorporated herein by reference by reference as though fully set forth.

100. The negligence, carelessness and/or recklessness of the Defendant, individually and as the agent, servant, worker and/or employee of AFS and/or SNK, consisted of, but is not limited to the following:

a. Failing to maintain proper and adequate control of his tractor trailer so as to avoid crashing into the deceased Plaintiff;

b. Failing to pay proper attention while operating his tractor trailer on I-81 causing him to leave his lane of travel and strike the deceased Plaintiff who was lawfully conducting a traffic stop;

c. Failing to take proper precautions in the operation of his tractor trailer so as to avoid the collision that occurred with the deceased Plaintiff;

d. Operating his tractor trailer in a negligent, careless and reckless manner without due regard for the rights and safety of the deceased Plaintiff;

e. Failing to have his tractor trailer unit under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

f. Failing to remain alert due to his fatigued condition;

g. Failing to operate his tractor trailer in accordance with the Federal Motor Carrier Safety Regulations;

h. Failing to make necessary and reasonable observations while operating his tractor trailer;

i. Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid striking the deceased Plaintiff;

j. Failing to timely and properly apply his brakes;

k. Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

l. Failing to disclose a disqualifying medical condition;

m. Consciously choosing not to disclose a disqualifying medical condition;

n. Consciously choosing to operate a CMV with THC in his system;

o. Consciously choosing to drive despite knowing he suffered from a disqualifying medical condition under FMCSR 391.41(b)(8);

p. Consciously choosing to drive while under the influence of drugs; and

q. Acting with a conscious disregard for the rights and safety of the deceased Plaintiff.

101. As a direct and proximate cause of the negligence and/or recklessness of the Defendant, the deceased Plaintiff suffered the following injuries:

a. Multiple traumatic injuries; and

b. Death.

102. As a result of the aforesaid injuries, the deceased Plaintiff sustained a loss of the everyday pleasures and enjoyments of life.

103. As a result of the aforesaid injuries, the deceased Plaintiff sustained embarrassment and humiliation.

104. As a result of the aforesaid injuries, the deceased Plaintiff sustained physical and mental pain and suffering.

105. As a result of the aforesaid injuries, the deceased Plaintiff sustained severe disfigurement before passing.

106. As a result of the aforesaid injuries, the deceased Plaintiff suffered an impairment of his earning capacity / potential.

**WHEREFORE**, the Plaintiff, Patricia Pahira, Individually and as Administrator of the Estate of Michael Pahira Jr., hereby seeks all damages allowed including punitive damages from the Defendant, Michael Bon, in an amount in excess of $150,000.00.

**COUNT II**
**NEGLIGENCE / RECKLESSNESS**
**PATRICIA PAHIRA, Individually and as the Administrator of the ESTATE OF MICHAEL PAHIRA JR. v. Augustin Freight Services LLC and SNK as being vicariously liable for Michael Bon**

107. The preceding paragraphs are incorporated herein by reference as though fully set forth.

108. The negligence, carelessness, and/or recklessness of AFS and SNK, as being vicariously liable for the actions of Michael Bon, consisted of, but is not limited to the following:

a. Failing to maintain proper and adequate control of his tractor trailer so as to avoid crashing into the deceased Plaintiff;

b. Failing to pay proper attention while operating his tractor trailer on I-81 causing him to leave his lane of travel and strike the deceased Plaintiff who was lawfully conducting a traffic stop;

c. Failing to take proper precautions in the operation of his tractor trailer so as to avoid the collision that occurred with the deceased Plaintiff;

d. Operating his tractor trailer in a negligent, careless and reckless manner without due regard for the rights and safety of the deceased Plaintiff;

e. Failing to have his tractor trailer unit under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

f. Failing to remain alert due to being fatigued;

g. Failing to operate his tractor trailer in accordance with the Federal Motor Carrier Safety Regulations;

h. Failing to make necessary and reasonable observations while operating his tractor trailer;

i. Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid striking the deceased Plaintiff;

j. Failing to timely and properly apply his brakes;

k. Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

l. Failing to disclose a disqualifying medical condition;

m. Consciously choosing to not disclose a disqualifying medical condition;

n. Consciously choosing to operate a CMV with THC in his system;

o. Consciously choosing to drive despite knowing he suffered from a disqualifying medical condition under FMCSR 391.41(b)(8);

p. Consciously choosing to drive while under the influence of drugs and/or medication; and

q. Acting with a conscious disregard for the rights and safety of the deceased Plaintiff.

109. As a result of the above-stated acts and omissions, the deceased Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Patricia Pahira, Individually and as the Administrator of the Estate of Michael Pahira Jr., hereby seeks all damages including punitive damages from the Defendants, Augustin Freight Services LLC and SNK, as being vicariously liable for Michael Bon, in an amount in excess of $150,000.00.

**COUNT III**
**NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / SELECTION**
**PATRICIA PAHIRA, individually and as the Administrator of the ESTATE OF MICHAEL PAHIRA JR. v. Augustin Freight Services LLC and SNK**

110. The preceding paragraphs are incorporated herein by reference as though fully set forth.

111. AFS and SNK had an obligation / duty to hire, retain and supervise drivers who operate their vehicles in a safe manner.

112. The deceased Plaintiff was injured as a result of an incident related to the Defendant's driving, more specifically, the Defendant's unsafe driving.

113. The negligence, carelessness and/or recklessness of AFS and SNK, individually and through its various employees, servants, agents and/or workers including, but not limited to Michael Bon, consisted of, but is not limited to the following:

a. Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including, but not limited to the Defendant;

b. Hiring and/or continuing to employ the Defendant despite the fact that it knew or should have known that his driving record made him unfit to safely operate a commercial vehicle;

c. Hiring and/or continuing to employ the Defendant despite the fact that it knew or should have known that lack of training and experience made him unfit to safely operate a commercial vehicle;

d. Hiring and/or continuing to employ the Defendant despite the fact that he had a propensity for driving violations;

e. Hiring and/or continuing to employ the Defendant despite his previous driving record;

f. Failing to train their drivers on the dangers of drug use while operating a CMV;

g. Hiring and/or continuing to employ the Defendant despite the fact that it knew or should have known that his propensity to break vehicular rules of various states could and/or would put the driving public at risk;

h. Permitting the Defendant to operate a CMV when it knew or should have known that he was not properly qualified and/or trained;

i. Failing to train and/or properly train the Defendant prior to allowing him to operate its CMV;

j. Allowing the Defendant to operate a CMV in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to implement and/or enforce an effective safety and/or disciplinary system;

m. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations including 392.82;

n. Failing to ensure that its employees, drivers and/or agents were truthful to the medical examiners; and

o. Failing to monitor and/or regulate its drivers' actions.

114. As a result of the above-stated acts and omissions, the deceased Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Patricia Pahira, individually and as the Administrator of the Estate of Michael Pahira Jr. hereby seeks all damages including punitive damages from the Defendants, Augustin Freight Services LLC and SNK in an amount in excess of $150,000.00 under the applicable statutes of the Commonwealth of Pennsylvania and the Local Rules of Court.

**COUNT IV**
**NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / SELECTION**
**PATRICIA PAHIRA, individually and as the Administrator of the ESTATE OF MICHAEL PAHIRA JR. v. SNK**

115. The preceding paragraphs are incorporated herein by reference as though fully set forth.

116. SNK are subject to liability for physical harm caused to third persons for their failure to exercise reasonable care to select and employ competent and careful carriers to transport

loads, which is an activity that involves a high risk of physical harm, unless skillfully and carefully done.

117. "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

118. SNK had a conscious obligation and duty to select, hire, retain and supervise carriers to transport loads in a safe manner.

119. SNK had a conscious obligation and duty to exercise reasonable care in selecting a competent and careful carrier to transport loads.

120. At all material times, SNK knew or should have known that Defendant AFS had an unsafe history in performing services as a motor carrier as detailed above.

121. Additionally, SNK were negligent and/or reckless in the selection of AFS as a carrier because it knew or should have known that AFS was negligent / reckless in the following ways:

a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Defendant Bon;

b. Failing to train and/or properly train Defendant Bon prior to allowing him to operate its Freightliner;

c. Hiring and/or continuing to employ the Defendant despite the fact that it knew or should have known that his driving record made him unfit to safely operate a commercial vehicle;

d. Hiring and/or continuing to employ the Defendant despite the fact that he had a propensity for driving violations;

e. Hiring and/or continuing to employ the Defendant despite his previous driving record;

f. Failing to have an appropriate disciplinary policy within the company;

g. Hiring and/or continuing to employ the Defendant despite the fact that it knew or should have known that his propensity to break vehicular rules of various states could and/or would put the driving public at risk;

h. Permitting the Defendant to operate a CMV when it knew or should have known that he was not properly qualified and/or trained;

i. Failing to train and/or properly train the Defendant prior to allowing him to operate its CMV;

j. Allowing the Defendant to operate a CMV in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures so that its individual brokers knew how to properly vet motor carriers;

l. Failing to ensure that AFS implemented and/or enforced an effective safety system;

m. Failing to monitor the publicly available SAFER and/or SMS data for AFS;

n. Failing to ensure that its employees, drivers and/or agents were aware of and complied with the rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

o. Violating the applicable rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

p. Failing to monitor and/or regulate its drivers' actions;

q. Failing to suspend, discipline, or provide remedial training to Defendant Bon prior to the Crash despite his history of unsafe driving practices;

r. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Defendant Bon; and

s. Failing to investigate AFS's ability to comply with the FMCSA regulations surrounding unsafe driving violations, driver fitness, HOS compliance and maintenance violations.

122. As a result of the above-stated acts and omissions, the deceased Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE**, the Plaintiff, Patricia Pahira, individually and as the Administrator of the Estate of Michael Pahira Jr. hereby seeks all damages including punitive damages from the SNK in an amount in excess of $150,000.00 under the applicable statutes of the Commonwealth of Pennsylvania and the Local Rules of Court.

**COUNT V**
**WRONGFUL DEATH**
**PATRICIA PAHIRA, Individually and as the Administrator of the ESTATE OF MICHAEL PAHIRA JR. v. ALL DEFENDANTS**

123. Plaintiff incorporates the preceding paragraphs of his Complaint as if set forth fully herein at length.

124. Michael Pahira Jr. is survived by his parents, Michael and Patti Pahira, his sister, Jen Buggy and her husband Damian, and his cherished nieces Brielle and Brynn.

125. Plaintiff brings this action by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and Pa.R.C.P. 2202, and claims all benefits and recoverable damages under the Wrongful Death Act on behalf of all other persons entitled to recover under law.

126. As a direct and proximate result of the foregoing, decedent, Michael Pahira Jr.'s wrongful death beneficiaries have been, continue to be, and will in the future be deprived of his counsel, services, companionship, society, guidance and all other damages recoverable under the Wrongful Death Act.

127. As a direct and proximate cause of the negligent, careless and reckless conduct of the Defendants as set forth above, which is incorporated herein, Michael Pahira Jr.'s Wrongful Death beneficiaries suffered, are suffering, and will for an indefinite period of time into the future, suffer damages, injuries, and losses including but not limited to: a loss of financial support and the beneficiaries have been wrongfully deprived of the contributions they would have received from him including monies he would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation and gifts.

128. As a direct and proximate result of the negligent, careless and reckless conduct of the Defendants as set forth above, which is incorporated herein, Michael Pahira Jr.'s Wrongful Death beneficiaries have been caused to incur and pay various expenses related to his sudden death.

**WHEREFORE**, the Plaintiff, Patricia Pahira, as the Administrator of the Estate of Michael Pahira Jr., hereby seeks all damages allowed from all Defendants, including punitive damages, in an amount greater than $150,000.00 under the applicable statutes of the Commonwealth of Pennsylvania and the Local Rules of Court.

**COUNT VI**
**SURVIVAL ACTION**
**PATRICIA PAHIRA, Individually and as the Administrator of the ESTATE OF MICAHEL PAHIRA JR. v. ALL DEFENDANTS**

129. Plaintiff incorporates the preceding paragraphs of his Complaint as if set forth fully herein at length.

130. Plaintiff brings this action on behalf of the Estate of Michael Pahira Jr., deceased, by virtue of the Survival Act, 42 Pa. C.S.A. § 8302 and 20 Pa. C.S.A. § 3371, and claims all benefits of the Survival Act on behalf of themselves and other persons entitled to recover under law.

131. As a direct and proximate result of the careless, negligent and reckless conduct of the Defendants as set forth above, which is incorporated herein, Plaintiff claims on behalf of the Estate of Michael Pahira Jr., all damages suffered by the Estate by the reason of death of Michael Pahira Jr., including but without limit the generality of the following: the severe injuries to Michael Pahira Jr. which resulted in his death, the anxiety, horror, fear of impending death, mental disturbance, pain, conscious pain and suffering, and other intangible losses which Michael Pahira Jr. suffered prior to his death; loss of future earning capacity; expenses for medical care; the loss and total limitation and deprivation of his normal activities, enjoyment of life, pursuits and life's pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained.

**WHEREFORE**, the Plaintiff, Patricia Pahira, as the Administrator of the Estate of Michael Pahira Jr., hereby seeks all damages allowed from all Defendants in an amount greater than $150,000.00 under the applicable statutes of the Commonwealth of Pennsylvania and the Local Rules of Court.

Respectfully submitted,

MORGAN & MORGAN PHILADELPHIA, PLLC

BY: *<u>/s/ K. Clancy Boylan</u>*

KEVIN CLANCY BOYLAN, ESQ. (#314117)
603 Stanwix St., Suite 1825
Pittsburgh, PA 15228
Ph: 215-446-9795
Fax: 215-446-9799
cboylan@forthepeople.com
*Attorney for the Plaintiff*